[No. 19485. Department One. January 14, 1926.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE BRITTON, *Appellant.*[1]

[1] ARREST (6)—AUTHORITY TO ARREST WITHOUT WARRANT. Where a felony has been committed in L. county, which officers of that county had reason to believe was committed by accused, and requested officers of S. county to detain or arrest him, the arrest without any warrant or charge filed is lawful though the grounds of suspicion were not communicated to the arresting officers.

[2] CRIMINAL LAW (124)—EVIDENCE — ARTICLES TAKEN FROM ACCUSED. No constitutional rights of accused are violated by arrest and search without warrant, where he was arrested by police officers on reasonable ground to believe that he had committed a felony; and stolen property found in his possession may be used in evidence against him.

[3] BURGLARY (17)—EVIDENCE—POSSESSION BY ACCUSED OF PROPERTY STOLEN. While the possession of stolen property is not, without other evidence, prima facie evidence of guilt, it will be held sufficient when supported by the slight circumstance that accused, when arrested, attempted to make an explanation of the possession of the stolen property that tended to inculpate him (TOLMAN, C. J., dissenting).

Appeal from a judgment of the superior court for Lincoln county, Truax, J., entered March 13, 1925, upon a trial and conviction of burglary. Affirmed.

*Roy C. Fox,* for respondent.

*R. M. Dye, Turner, Nuzum & Nuzum,* and *Edward M. Connelly,* for appellant.

[1]Reported in 242 Pac. 377; 247 Pac. 9. ·

HOLCOMB, J.—From a judgment of conviction and sentence thereon of the crime of burglary in the second degree in the lower court, this appeal is brought.

Between the hours of 9 o'clock p. m. on Sunday, December 7, 1924, and 7 a. m. on December 8, 1924, the Richardson Drug Store in Wilbur, Lincoln county, was burglarized, and eleven separate items and their containers of narcotic drugs stolen therefrom. The burglary was discovered about 7 a. m., December 8, and that afternoon, at about 2 o'clock, appellant, who had been staying with his parents in Wilbur, boarded an east-bound stage in Wilbur and went to Spokane, taking with him two suit cases. On December 8, an information charging appellant with the burglary was filed in the lower court, and a warrant for his arrest issued. Appellant was arrested in Spokane by police officers, acting upon the request of the sheriff of Lincoln county. Officers of the police force met the stage on its arrival in Spokane, and took appellant into custody, taking him to police headquarters, where his baggage and person were searched. No narcotics were found in his luggage, but in an inside pocket of his overcoat was found a bottle of the narcotics known as Heroin Hydro-Chloride, which had been stolen. It was the only narcotic found on or about the person or luggage of appellant. What became of the rest of the narcotic drugs was never known. The narcotic found in the inside pocket of the overcoat of appellant was identified by the proprietor of the drug store as one of the articles stolen, bearing his own private cost mark made by himself. Appellant having been taken to the county jail at Davenport, was released on bail December 31, 1924. Shortly thereafter the case was set for trial on January 19, 1925. On that day, when the case was called, the attorney for appellant interposed a petition

for the suppression of the evidence of the vial of nar-
cotics taken from the clothing of appellant, alleging
that it had been illegally seized, and appellant's con-
stitutional rights invaded. The trial court refused to
hear this motion because the same had not been timely
made. Counsel for appellant, at the request of the trial
court, stated in the record what he expected to be able
to prove in support of his petition, which was there-
upon denied, and the case proceeded to trial.

At the close of the state's case, appellant moved for
a directed verdict, which was denied. Appellant intro-
duced testimony in his defense and the case went to the
jury. A verdict of guilty as charged was returned and
a motion for a new trial was denied.

Appellant urges as grounds for reversal four as-
signments of error:

(1) That the trial court erred in refusing to hear
appellant's motion to suppress evidence; (2) that the
trial court erred in refusing appellant's motion to sup-
press evidence; (3) that the trial court erred in re-
fusing to grant appellant's motion for a directed
verdict; and (4) that the trial court erred in over-
ruling appellant's motion for a new trial.

The first two grounds of error are argued together,
and are argued upon the hypothesis that the evidence
was illegally obtained from appellant, because at the
time it was seized by the officers in Spokane, there was
no charge pending against appellant, and no reason-
able ground or probable cause for suspicion that ap-
pellant had committed the crime in question.

Appellant argues that the officers in Spokane were
simply told by the sheriff's office in Lincoln county to
detain appellant and "look him over," when he ar-
rived in Spokane; that the evidence is that appellant
was not under arrest, but was merely held on suspicion

without any crime having been charged against him, and that the evidence obtained was therefore seized illegally, before any crime was charged or any legal cause for detaining appellant shown to have existed. It is also claimed that, because appellant himself did not divulge the information to his counsel as to how the evidence had been obtained until January 15, or four days before the trial was begun; that he had been at his home in Wilbur during the interim after he was released on bail until that date, while his attorney resided in Davenport, the county seat; that counsel for appellant had filed an affidavit of prejudice against the resident judge of Lincoln county, and no one had been obtained to take the place of the resident judge before that time who could hear any petition to suppress the evidence; that appellant, having filed his motion to suppress the evidence as the court's first order of business on the morning of the day the case was set for trial, before a jury had been empaneled to try the case; the petition and motion were timely.

[1] The whole argument of appellant is based upon a false premise. The cases cited to support the contention of appellant are all based upon the premise that the seizure of property taken from the accused was unlawful in the beginning, and constituted an unwarranted violation of the constitutional rights of the accused under the state and federal constitutions, and the illegal and unconstitutional compulsion of the production of incriminating evidence by the accused. Appellant cites to sustain his contentions *State v. Gibbons,* 118 Wash. 171, 203 Pac. 390; *State v. McDaniel,* 115 Ore.. 187, 231 Pac. 965, 237 Pac. 373; *Keith v. State,* 235 Pac. (Okl. Cr.) 631; and *State v. Ellis,* 22 Wash. 129, 60 Pac. 136.

The above cases are not in point. There was evidence here of the burglarious entry of the drug store and the

larceny of property therefrom. The officers of Lincoln county had notified the police officers of Spokane to watch for, detain, and examine appellant. This was done by the officers in Spokane immediately upon the arrival of appellant there, and before he had had an opportunity to dispose of any of the stolen property. It is true that a warrant was not then in the hands of the police officers of Spokane, but it has always been the law that peace officers may detain or arrest on suspicion of a felony without a warrant for an offense not committed in their presence, but merely on suspicion of the commission of the crime, and the officers have reasonable grounds to believe that the person arrested committed it. 5 C. J. 399-417.

The officers in Spokane had reasonable grounds to believe, from the information received from the officers of Lincoln county, that a felony had been committed in Lincoln county, and had proper cause to detain and examine appellant upon request so to do by the officers of Lincoln county. What information was in the possession of the officers of Lincoln county, although not communicated to the officers in Spokane, was not necessary to be disclosed to them.

[2] The same proposition was advanced in *State v. Royce,* 38 Wash. 111, 80 Pac. 268, 3 Ann. Cas. 351, that a pawn ticket taken from the person of the accused while he was in custody of the officers, and before any charge of misdemeanor or crime had been made against him, violated his constitutional rights in that his person, papers and effects were subjected to unreasonable search and seizure, and that he was thereby compelled to produce evidence against himself. In that case we held that the doctrine advanced by appellant did not apply to the facts. We also held, following two previous cases cited in the opinion, that, in a criminal action, articles of personal effects or money taken from

the person of the defendant might be offered in evidence against him; and that there was no distinction in principle by reason of the fact that the articles taken from the person of the accused were taken while he was illegally in custody before any charge had been preferred against him, and before the officers had knowledge of the burglary. In this case, the officers had knowledge of the burglary, and request to detain and search appellant. Any irregularity in the manner of his arrest and detention was cured when evidence of his connection with the crime was discovered in his effects and his arrest then became legal. The case is therefore stronger than the *Royce* case.

We also, very recently, held in *Olympia v. Culp,* 136 Wash. 374, 240 Pac. 360, that where officers had the right to detain a person suspected of the commission of a crime they could use such force as was necessary for that purpose, and if, in using that force, they discovered that he was guilty of an offense, they could lawfully arrest him for that offense. It is also held in the last cited case, as is well settled generally, that articles, personal effects, or money, taken from the person of a defendant lawfully arrested may be used in evidence against him; citing cases.

For the foregoing reasons, we are convinced that the arrest was lawful, that the stolen property taken from the person of appellant was not unlawfully seized, and was properly and legally used in evidence against him.

[3] It is also vigorously contended that the recent possession of stolen property alone is only a circumstance tending to show guilt; is not of itself sufficient to make a *prima facie* case of the commission of the offense charged; and there being no other evidence tending to connect appellant with the burglarious entry of the drug store, appellant's motion for a directed verdict, or else his motion for a new trial

should have been granted; citing *State v. Beeman,* 51 Wash. 557, 99 Pac. 756, and *State v. Pienick,* 46 Wash. 522, 90 Pac. 645, 13 Ann. Cas. 800, 11 L. R. A. (N. S.) 987.

In the first case, it is true, the court laid down the general rule that "the possession of stolen property without other evidence of guilt is not *prima facie* evidence of breaking and entering." But it was also stated in that case that other evidence than the mere possession of stolen property may be adduced from all the facts and circumstances shown in the case. In that case there was little evidence in the record other than the possession of the stolen property to support conviction.

In the second case relied upon, an arson case, there was no evidence tending to connect the accused with the crime other than his proximity and opportunity to commit it. In this case, while it must be conceded the evidence is very slender tending to connect appellant with the commission of the offense in question, other than the mere possession of one of eleven stolen articles taken from the burglarized premises, there are some other circumstances. While appellant did not testify himself, but relied wholly upon the testimony given by the officers as to the statements made by him, the testimony of the officers was to the effect that appellant, when confronted with the possession of the stolen narcotics made the remarks: "What will mother think of this?" "I guess I am up against it." "Well, I guess somebody put it in my pocket." The first statement of his is, of course, as consistent with innocence as with guilt. The statement that it was put in his pocket by someone else, made by him, was rebutted by evidence on the part of the state that no one sat near him in the stage going from Wilbur to Spokane

except another resident of Wilbur, who was also a druggist, and who, appellant stated to the officers was not to be thought of as doing such a thing. The evidence as a whole, therefore, tended very strongly to negative the attempted explanation of the possession of the stolen property by appellant, and to inculpate him.

We are obliged to say that there was barely sufficient evidence to submit the question to the jury under the authority of *State v. Royce, supra,* and *State v. Munson,* 7 Wash. 239, 34 Pac. 932.

Finding no reversible error, the judgment and sentence must be and are affirmed.

ASKREN, FULLERTON, and MITCHELL, JJ., concur.

TOLMAN, C. J. (dissenting)—In my judgment, if we are to follow our previous holdings cited in the majority opinion, the evidence of guilt was insufficient to take the case to the jury. I therefore dissent.

## ON REHEARING.

### [*En Banc.* July 1, 1926.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adhere to the Departmental opinion heretofore filed herein. The judgment and sentence are affirmed.